**In re Gerald L. FISHMAN, Debtor.**

**Bankruptcy No. 99 B 15242.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Dec. 7, 1999.

Malcolm M. Gaynor, Paul J. Gaynor, Schwartz, Cooper, Greenberger & Krauss Chtd., Chicago, IL, for debtor.

Ariel Weissberg, Richard Steiner, Weissberg & Assocs., Chicago, IL, for objector.

## MEMORANDUM OF OPINION

EUGENE R. WEDOFF, Bankruptcy Judge.

This Chapter 11 case has come before the court on a creditor's objection to exemptions scheduled by the debtor. Illinois law defines a set of personal property exemptions, which were listed in the debtor's schedules, but an Illinois statute, 735 ILCS

5/12–1004, excludes from these exemptions claims for "wages due." The creditor contends that she holds such a wage claim against the debtor, so that his claimed exemptions are not valid. Two issues are raised by the objection: (1) the effect in bankruptcy of a state law excluding particular claims from the scope of exemptions, and (2) the nature of the claim asserted by the creditor. For the reasons set forth below, a state law excluding particular claims from the scope of exemptions should be given effect in bankruptcy, by reducing the amount of the otherwise available exemptions to the extent of any excluded claims; the property thus determined to be nonexempt would be distributed according to ordinary bankruptcy priorities. However, the claim asserted by the creditor in this case is not one for "wages due" under 735 ILCS 5/12–1004, and so her objection to exemption must be denied.

### Jurisdiction

Pursuant to 28 U.S.C. § 1334(a), federal district courts have exclusive jurisdiction over bankruptcy cases. However, pursuant to 28 U.S.C. § 157(a), the district courts may refer bankruptcy cases to the bankruptcy judges for their district, and, by Internal Operating Procedure 15(a), the District Court for the Northern District of Illinois has made such a reference of the pending case. When presiding over a referred case, a bankruptcy judge has jurisdiction, under 28 U.S.C. § 157(b)(1), to enter appropriate orders and judgments as to core proceedings within the case. The allowance or disallowance of exemptions from the property of the estate is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### Findings of Fact

None of the facts relevant to the pending motion are in dispute. On January 5, 1999, after a jury trial in the United States District Court for the Northern District of Illinois, RoxAnne Rochester obtained a judgment against Gerald Fishman in the amount of $750,000. This judgment was based on allegations that Fishman engaged in sexual and other misconduct toward Rochester that interfered with her business relationship with her employer, a Chicago law firm, causing her to abandon her position as an attorney at the firm. The judgment followed the jury's verdict that included awards of $150,000 for "back pay" and $150,000 for "front pay".

On May 11, 1999, Fishman filed a voluntary Chapter 11 bankruptcy petition. In the schedules accompanying his petition, Fishman claimed certain items of personal property as exempt under Illinois law. On June 10, 1999, Rochester filed and presented an objection to this exemption claim, pursuant to Fed.R.Bankr.P. 4003. Specifically, Rochester argued (1) that Illinois law does not allow an exemption for personal property to be effective against a claim for wages; and (2) that the $300,000 portion of the district court judgment, based on front and back pay, was a wage award thus excluded from exemption.

On June 10, 1999, this court denied Rochester's objection, without prejudice, and later allowed the parties to brief the issues in connection with a motion to reconsider.

### Conclusions of Law

*The matters in dispute.* The dispute between the parties in the present case is over the effect of Illinois exemption law under the Bankruptcy Code. Illinois law is relevant here because of the Code's incorporation of state law in defining the extent of exemptions.

Section 522(b) of the Code provides two alternative sets of exemptible property. First, § 522(b)(1) allows the debtor to exempt property that is listed in the Bankruptcy Code itself—the "federal" exemptions of § 522(d). Second, § 522(b)(2) allows for "state" exemptions— "any property that is exempt under ... State or local law," as applicable in the debtor's domicile, which, in this case, is Illinois. Section 522(b)(1) allows states to prohibit use (or "opt out") of the federal exemptions, and Illinois has done so. *See* 735 ILCS 5/12–1201; *Clark v. Chicago*

*Municipal Employees Credit Union,* 119 F.3d 540, 543 (7th Cir.1997). Thus, only Illinois exemptions are available to debtors domiciled in this state.

Among the exemption provisions of Illinois law is a statute defining several types of personal property as generally "exempt from judgment or attachment by creditors." 735 ILCS 5/12–1001. Pursuant to this statute, Gerald Fishman listed items of his personal property as exempt in his bankruptcy schedules. RoxAnne Rochester objected to these claimed exemptions on the basis of another Illinois statutory provision, 735 ILCS 5/12–1004, which states that no personal property is exempt from certain claims for "wages due."

The parties do not dispute that the personal property claimed exempt by Fishman falls within the categories defined by 735 ILCS 5/12–1001. Thus, this property is exemptible under § 522(b)(2) of the Bankruptcy Code unless (1) the "wages due" exclusion of 735 ILCS 5/12–1004 is effective to limit the exemptions otherwise available to an Illinois debtor in bankruptcy, and (2) Rochester actually holds a claim for "wages due" within the meaning of 735 ILCS 5/12–1004. These two issues are addressed in turn.

*(1) The effect in bankruptcy of state laws excluding particular claims from otherwise applicable exemptions.* For purposes of bankruptcy law, there are two possible ways to deal with a state law excluding particular claims from otherwise applicable exemptions. One way—ignoring the exclusion—is illustrated by the First Circuit's decision in *Patriot Portfolio, LLC v. Weinstein (In re Weinstein),* 164 F.3d 677 (1st Cir.1999). This case dealt with a Massachusetts homestead law, which provided a general exemption for a debtor's "estate of homestead," but which also provided (1) that this estate only came into existence upon the recording of a declaration by the owner of the homestead property; and (2) that the exemption was inapplicable to a number of claims, including "debts contracted prior to the acquisition of the estate of homestead." *Id.* at 679–80. For purposes of bankruptcy, the First Circuit analyzed the situation as follows: (1) the general exemption of homestead property under Massachusetts law made it exempt under § 522(b)(2) of the Code; (2) once the property was exempt, it could be liable only for those claims excluded from exemption by the Bankruptcy Code itself (in § 522(c)); and (3) because "pre-acquisition" claims are not excluded by § 522(c), the state law creating such an exclusion was preempted by the Code. *Id.* at 681–83. Accordingly, the court held that the existence of a claim arising prior to the debtor's acquisition of the estate of homestead had no effect on the debtor's homestead exemption in bankruptcy. It has been argued that this approach also "furthers the overall policy goals of the bankruptcy process such as ensuring uniformity under a federal distribution scheme." *In re Scott,* 199 B.R. 586, 593 (Bankr.E.D.Va.1996).

The contrary approach—recognizing exclusion of particular claims from exemption—is reflected in the Seventh Circuit's decision in *In re Ondras,* 846 F.2d 33 (7th Cir.1988). Here, Indiana provided the applicable exemption law, allowing an exemption for certain property, but limiting the exemption to debts "growing out of or founded upon a contract, express or implied." *Id.* at 34. The debtor scheduled exemptions based on this law, and a creditor holding a tort claim objected. The Seventh Circuit ruled that the objection had to be sustained, because Indiana's exemption law only applied to property that was not subject to tort claims: "It placed ... property beyond the reach only of certain creditors (i.e., contract creditors) while keeping the property within the reach of other creditors such as the tort creditors here." *Id.* at 35–36. Hence, only such "tortfree" property could be exempted by the debtor under § 522(b)(1). *Id.* at 36.

This court, of course, is bound to follow the decision of the Seventh Circuit.

18 James W. Moore, et al., *Moore's Federal Practice* § 134.02[2], at 134–20 (3d ed.1998) (even incorrect decisions of a court of appeals bind lower courts within the circuit). However, the *Ondras* decision, even if it were not binding, would still present the more persuasive reading of § 522(b) of the Bankruptcy Code. As *Ondras* points out, § 522(b) reflects a compromise between conflicting legislative provisions, with the apparent intent of allowing states to retain wide discretion over the exemptions applicable in bankruptcy. 846 F.2d at 35 (citing *In re Sullivan,* 680 F.2d 1131, 1135–36 (7th Cir.), *cert. denied,* 459 U.S. 992, 103 S.Ct. 349, 74 L.Ed.2d 388 (1982)). It would not be consistent with this intent to simply ignore all state limitations on the scope of exemptions, with the effect of transforming any state exemption, regardless of how limited the range of claims to which it applied, into an exemption applicable to all claims. To take an unlikely example, suppose that a state law provided that all real property of a debtor was exempt against library fines. Faced with such a state law, the *Weinstein* approach would apparently result in a holding (1) that all real property of the debtor was exempt under § 522(b)(2), and (2) that the state law excluding claims other than library fines from the scope of the exemption would be preempted by § 522(c). Such a result cannot be reconciled with an intent to incorporate state law meaningfully into § 522(b).[1]

*The absence of conflicts requiring preemption.* On the other hand, recognizing state exclusions from the scope of exemptions, pursuant to the *Ondras* approach, does not create any conflict with other provisions of the Bankruptcy Code. This is clear from an overview of the operation of exemptions under the Code. The Code treats exemptions as follows:

(1) Under §§ 541 and 542, all property interests of the debtor, defined very broadly, are included in the debtor's estate, and property of the estate must generally be turned over to the bankruptcy trustee.

(2) The property of the estate is then used to pay creditors. In Chapter 7 cases, the trustee has the duty, under § 704(1), to liquidate the property of the estate, and then, under § 726, to distribute the proceeds to creditors in a defined order of priority. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 383 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 96 (1978) ("[S]ection [726] is the general distribution section for liquidation cases. It dictates the order [of] distribution of property of the estate, which has usually been reduced to money by the trustee under the requirements of section 704(1)."). In Chapter 11 and 13 cases, creditors are paid pursuant to plans that must, pursuant to §§ 1129(a)(7) and 1325(a)(4), pay at least as much on account of claims as the creditors would have received had the estate been liquidated in Chapter 7.

---

1. *Weinstein* states that its holding is compelled by the Supreme Court's decision in *Owen v. Owen,* 500 U.S. 305, 111 S.Ct. 1833, 114 L.Ed.2d 350 (1990). 164 F.3d at 681. However, *Owen* does not involve the situation presented by either *Weinstein* or the present case. In *Owen,* the only question was the operation of § 522(f) of the Code—which allows judgment liens to be avoided if they impair exemptions to which the "debtor would have been entitled under subsection [522](b)." The Supreme Court held that this language allows a debtor to avoid a judgment lien if the debtor would have been entitled to an exemption in the absence of the lien. 111 S.Ct. at 1836–38. As a result, if a state law makes an exemption available only as to property not subject to judgment liens, a debtor may avoid judgment liens on such property pursuant to § 522(f), and the property (freed from the liens) would then be subject to the state law exemption for purposes of § 522(b). The state law in this situation is not preempted; the lien avoidance of § 522(f) simply makes the state law restriction on exemption inapplicable. Indeed, *Owen* makes it plain that the Bankruptcy Code never preempts state laws defining the scope of exemptions applicable in bankruptcy: "Nothing in subsection [522](b) (or elsewhere in the Code) limits a State's power to restrict the scope of its exemptions...." 111 S.Ct. at 1835.

(3) Under § 522(b) of the Code, as discussed above, the debtor may exempt certain property from the bankruptcy estate. Exemption has the primary effect of removing property from the estate, allowing debtors to retain the exempted property for purposes of support and advancing a fresh start. *See* 11 U.S.C. § 542(a) (exempt property is not required to be turned over to the trustee); *Sherk v. Texas Bankers Life & Loan Ins. Co. (In re Sherk)*, 918 F.2d 1170, 1174 (5th Cir.1990) (property found by the bankruptcy court to be exempt "is no longer property of the estate"); *In re Gagnard*, 17 B.R. 811, 813 (Bankr.W.D.La.1982) (exempt property, though initially property of the estate, "becomes property of the debtor").

(4) In addition to being removed from the estate under § 522(b), exempt property is given further, "extra-bankruptcy" protection by § 522(c), which provides that "property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case." Thus, exempt property is not only protected against sale by the bankruptcy trustee, but is also generally protected against collection actions, under nonbankruptcy law, by prepetition creditors—even as to claims that were not discharged. *Walters v. U.S. National Bank*, 879 F.2d 95, 96–98 (3d Cir.1989); *S & C Home Loans, Inc. v. Farr (In re Farr)*, 224 B.R. 438, 439 (Bankr.N.D.Cal.1998).

(5) The extra-bankruptcy protection against collection actions offered by § 522(c) is subject to three exceptions. Section 522(c) expressly denies this extra protection to claims arising from (1) nondischargeable tax and support obligations, (2) unavoided liens, and (3) certain obligations in regard to depository institutions. In a bankruptcy case involving claims excepted from the extra-bankruptcy effect of exemption, property exempted by the debtor is still removed from the estate, but the creditors holding the excepted claims may pursue collection actions against the exempt property. *See Davis v. Davis*, 170 F.3d 475, 481 (5th Cir.1999) (en banc) (Section 522(c) permits creditors holding excepted claims "to proceed against [exempt] property after bankruptcy based on the rights they would have had under state law if bankruptcy had not been filed.")

The effect of these provisions is that, under the Bankruptcy Code, all of the property of a debtor's estate is either exempt or nonexempt.

■ To the extent that property is *exempt*, it is removed from the estate and returned to the debtor; it cannot be used to pay debts through the bankruptcy case, and (with the exceptions enumerated in § 522(c)) cannot be reached by creditors through nonbankruptcy collection actions. However, because § 522(c) only applies to exempt property, there is no conflict in recognizing that state law may render property nonexempt as to particular claims. As to such nonexempt property, § 522(c) never comes into effect.

■ To the extent that the property is *nonexempt*, it is used in the bankruptcy case—either directly (in Chapter 7) or indirectly (in Chapters 11 and 13)—to pay claims against the estate, according to the priorities established by the Code. Sustaining an objection to a claimed exemption in property results in that property being nonexempt, and so subject to liquidation and distribution according to the Code's priorities. Thus, priority of distribution is not affected by denying an exemption to the extent that property is subject to claims excluded from exemption by state law. The nonexempt property resulting from recognizing state law exclusions is used like any other nonexempt property, and cannot be used to make payments to the excluded claims in excess of their assigned bankruptcy priorities. (In this way, as often happens under the Code, creditors may receive a different distribution, intended to be more equitable, than they would have received under nonbankruptcy law.)

. *The parallel to tenancy by the entirety.* The proper treatment of claims excluded from exemption by state law is reflected in a number of decisions involving tenancy by the entirety. Under the law of some states, if a husband and wife own property as tenants by the entirety, they can only transfer an interest in the property jointly; neither spouse, individually, may alienate any interest in the property. This type of state law has been recognized as giving the husband and wife an exemption effective as to claims against only one spouse, but not effective as to claims against both spouses jointly. *In re Allard,* 196 B.R. 402, 409 n. 5 (Bankr.N.D.Ill.1996), *aff'd,* 202 B.R. 938 (N.D.Ill.1996) (collecting authorities). Thus, tenancy by the entirety presents the same situation as the present case—an exemption valid as to some claims (those against only one spouse), but invalid as to others (joint claims).

In dealing with this situation, the courts have arrived at a straightforward manner of applying the applicable state law: where there are joint claims against the debtor's estate, excluded from exemption, the debtor's exemption is simply reduced by the amount of the joint claims. *See, e.g., In re Wenande,* 107 B.R. 770, 774 (Bankr. D.Wyo.1989) ("[D]ebtors may exempt out of their estate ... their equity in the entireties property, less the total sum of all joint claims against both debtors."); *Sumy v. Schlossberg (In re Sumy),* 777 F.2d 921, 928 (4th Cir.1985) (a debtor's interest in entireties property is exempt under the Bankruptcy Code "to the extent that there are only individual claims," but the debtor "does not benefit from [a § 522(b) exemption] to the extent of joint claims"). Thus, if there are no claims

excluded from exemption, the debtor's exemption in the property is allowed to the full extent available under state law. Conversely, if the excluded claims have a value greater than the value of the exempt property, no exemption can be recognized:

> If the sum of the total claims held by creditors with claims against both debtors exceeds the debtors' equity in their entireties property, then none of their entireties property may be exempted from the estate. If there were not a single creditor with a claim against both of the debtors, their entireties property would be totally exempt.

*Wenande,* 107 B.R. at 774.[2]

In the same way, where state law excludes a particular type of claim from exemption, the value of the excluded claim must be recognized as reducing the exemption to which the debtor would otherwise be entitled, allowing the debtor's exemption only to the extent that the value of the exempted property exceeds the excluded claims. In the present case, then, to the extent that Rochester has valid claims against Fishman for "wages due"— excluded from exemption by Illinois law— her objection to his personal property exemptions would have to be sustained.

*(2) The nature of Rochester's claim.* There is, however, considerable question about whether Rochester holds a claim excluded from exemption under Illinois law. The full text of 735 ILCS 5/12–1004, the statute on which Rochester relies, reads as follows:

> No personal property shall be exempt from levy of attachment or judgment if the debt or judgment is for the wages of

---

**2.** Although the decisions dealing with entireties property generally recognize that joint claims should result in an exclusion from exemption to the extent of the joint claims, the decisions disagree about what should be done with the property as to which the exemption is not recognized. Several suggest that the property excluded from exemption should be used to pay only the joint claims. *See, e.g., In re Ginn,* 186 B.R. 898, 903

(Bankr.D.Md.1995). However, the better result, as suggested above, is to employ nonexempt property in payment of all claims, in the priority established by the Code. *See* Lawrence Kalevitch, *Some Thoughts on Entireties in Bankruptcy,* 60 Am.Bankr.L.J. 141, 147–49 (1986) (arguing in favor of distribution pursuant to Code priorities); *In re Wenande,* 107 B.R. 770, 774–75 (Bankr.D.Wyo.1989) (adopting this position).

a laborer or employee, providing the court entering judgment finds that the claim sued for is for wages due such person as laborer or employee, which finding shall be expressly stated in the judgment.

This provision was originally enacted in 1887, as Section 4 of a general personal property exemption law, with essentially the same language as the current law. 1887 Ill. Laws 101. In the more than 120 years that the provision has been in effect, there appear to be fewer than a dozen reported decisions applying it, and none since 1936. Nevertheless, the reported decisions uniformly indicate that, as an exclusion from exemption, the provision is to be construed narrowly. *Epps v. Epps*, 17 Ill. App. 196, 199–200 (1st Dist.1885), the first decision to construe the provision, discussed the issue this way:

> It is well settled that statutes creating exemptions from levy and forced sale under execution are beneficial in their operation, and founded in a wise policy, and should therefore receive a liberal construction. *Good v. Fogg*, 61 Ill. 449; Washburn v. Goodheart, 88 Ill. 229; Thompson on Homesteads and Exemptions, §§ 4–7 and cases cited. But should the provisions of the exemption law under consideration here receive like construction?
>
> The general purview of the statute is to grant exemption of a certain amount of personal property belonging to debtors, from attachment, execution and distress for rent. The fourth section creates an exception in favor of creditors whose judgments are for their wages as laborers or servants. It would seem that the same policy which dictates a liberal construction, of the statute in furtherance of its general beneficial purpose would necessitate a restricted construction of an exception by which its operation is limited and abridged.

On this basis, the court found that the wages of a bookkeeper were not wages of a "laborer or servant" (the language originally employed in the statute). 17 Ill.App. at 202. Several decisions of the Illinois Appellate Court applied the *Epps* holding over the ensuing decades, and the last reported case construing the statute expressly approved its reasoning. *Markus ex rel. Guditus v. Hart, Schaffner & Marx*, 284 Ill.App. 166, 168–69, 1 N.E.2d 699, 700 (1st Dist.1936).

Given this interpretation, Rochester's claim in the present case cannot fall within the exclusion from exemption specified by 735 ILCS 5/12–1004. Ordinarily, a "claim ... for wages due" would be understood to involve work actually performed by the claimant. The word "due" implies a liquidated amount, involving, in the present context, payment for actual services rendered over a definite period. *See Black's Law Dictionary* 499 (6th ed.1990) ("The word 'due' always imports a fixed and settled obligation or liability. . . .") Consistent with this understanding, every reported case applying the Illinois exemption exclusion involved a claimant who actually performed work for which compensation was being sought. Rochester's claim is not of this sort. Rather, her claim was for tortious interference by Fishman in her business relationship with the firm that employed her, and she sought damages based on a loss of compensation that she might otherwise have earned. This is not, in the ordinary sense of the words, a claim for wages "due," but a claim for "lost" wages, or wages that "would have been earned" but for the tortious conduct. Only an exceedingly liberal interpretation of the Illinois exclusion from exemption could encompass Rochester's claim. Based on the ordinary meaning of "wages due," and particularly under the narrow interpretation required by the Illinois courts, her claim is not entitled to the exclusion.

A second consideration leads to the same result. The exclusion from exemption in 735 ILCS 5/12–1004 requires that "the court entering judgment find[ ] that the claim sued for is for wages due" and that this finding be "expressly stated in the judgment." The Illinois courts have accordingly held that the finding of "wages

due" must be made by the court, at the time of entering judgment, rather than by a jury. *Epps*, 17 Ill.App. at 199 ("This finding would seem to be required, not at the trial or as a part of the trial, but at the time of the rendition of judgment, and the statute provides in express terms that it is to be made by the court."); *Bundy v. Harris*, 151 Ill.App. 461, 462 (4th Dist. 1909) ("The duty rests upon the court at the time of rendering judgment to deter- mine whether the indebtedness for which judgment is being rendered is for such wages."). The district court's judgment in Rochester's favor contains no finding by the court that the judgment is based on a claim of wages due; rather, the judgment simply refers to the jury's verdict. On this basis also, the judgment is not within the statutory exclusion from exemption.

### Conclusion

Because the exemptions in personal property claimed by Fishman are autho- rized by Illinois law, and because Roch- ester has not established a claim against Fishman that would be excluded from these exemptions, her objection to the ex- emptions must be denied. A separate or- der will be issued in conformity with this decision.